IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOLANDA BLASSINGAME *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO *et al.*, <br><br> Defendants. | No. 19-cv-07287 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION & ORDER**

Before the Court is Defendants' motion[1] to bifurcate and stay discovery and trial on Plaintiffs' *Monell* claim. (Dkt. 114.) For the reasons that follow, Defendants' motion is granted.

**I.     BACKGROUND**

Plaintiffs allege that on January 29, 2015, Chicago police officers executed a search warrant at Plaintiffs' apartment.[2] (Dkt. 67 ¶¶ 2–3.) Plaintiffs contend that Defendants mistakenly searched Plaintiff's apartment when the correct target of the

---

[1] Defendant City of Chicago moved to bifurcate and stay discovery and trial on Plaintiffs' *Monell* claim. (Dkt. 114.) At a status hearing on February 15, 2023, the Officer Defendants made an oral motion to join Defendant City of Chicago's motion. Plaintiffs had no objection, and the Court granted the Officer Defendants' motion. Accordingly, the Court refers to plural Defendants as the movants throughout this Opinion.

[2] Several of the Plaintiffs were minors during the underlying incident leading to this case as well as when this case was filed. Plaintiff Jolanda Blassingame sues for herself and on behalf of her minor children—Jaden Fields (eleven years old in 2015); Jeremy Harris (six years old in 2015); and Justin Harris (four years old in 2015). Charlette Blassingame also sues for herself and on behalf of her minor child, Nasir Norman (eleven years old in 2015).

search warrant, Derec Bell, did not live in Plaintiffs' apartment building. (*Id.* ¶ 4.) Plaintiffs allege that Bell was incarcerated at the time of the search. (*Id.*) Plaintiffs further allege that the Defendant Officers repeatedly pointed assault rifles toward Plaintiffs at close range, used profane and abusive language toward them, and destroyed Plaintiffs' property. (*Id.* ¶¶ 6–9.) Plaintiffs contend that, as a result of the traumatic situation, Plaintiffs have suffered emotional and psychological distress. (*Id.* ¶ 13.) Plaintiffs also allege that Defendant City of Chicago has maintained a longstanding practice of using excessive force against citizens of color, as shown by the conduct against Plaintiffs. (*Id.* ¶¶ 13, 29–43.) Plaintiffs sued Defendant Officers and Defendant City of Chicago and alleged a *Monell* claim against Defendant City of Chicago, as well as claims under 42 U.S.C. § 1983 and related state law claims against Defendant Officers. (*Id.* ¶¶ 127–232.)

Defendants moved to bifurcate Plaintiffs' *Monell* claim from the claims against Defendant Officers and to stay discovery and trial on the *Monell* claim. (Dkt. 114.) Plaintiffs oppose Defendants' motion. (Dkt. 123.)

## II.   LEGAL STANDARD

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). As the Seventh Circuit has held, if even "one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007); *see also*

2

*Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) (courts "must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party."). Whether to bifurcate claims is "committed to the discretion of the district court" and "made on a case by case basis." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

### III. DISCUSSION

#### A. The Parties' Arguments

Defendants first assert that bifurcation will prevent prejudice to all Defendants. (Dkt. 114 at 11–12.) Defendant Officers say they would be prejudiced by a trial where Plaintiffs' *Monell* claim is included with their other claims because Plaintiffs could present alleged misconduct from non-defendant officers. (*Id.* at 11.) This scenario would invite jurors "to find Defendant Officers guilty by association, rather than deciding liability based on their own actions." (*Id.*); *see Lopez v. City of Chicago*, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of Chicago's various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."). Bifurcation would also avoid substantial prejudice to Defendant City of Chicago because, they urge, if "the allegations against the [Defendant Officers] are proven at trial, the jury may hold the City liable on the *Monell* claim merely because it is appalled by the officers' conduct, thereby improperly converting the *Monell* claim into a *respondeat superior* claim." (Dkt. 114 at 12.); *see Bradford v. City of Chicago*, 2019 WL 5208852,

3

at *4 (N.D. Ill. Oct. 16, 2019) (bifurcation appropriate because of the risk that "*Monell* would devolve into a *respondeat superior* claim."). Prejudice to the Plaintiffs will also be prevented because bifurcation will lead to earlier disposition of Plaintiffs' individual claims. (Dkt. 114 at 12–13.); *see Clarett v. Suroviak*, 2011 WL 37838, at *2 (N.D. Ill. Jan. 3, 2021) (Earlier disposition of individual claims is likely because "bifurcation allows a bypass of discovery relating to the *Monell* claims, which can add significant . . . time, effort, [and] cost.").

Defendants further argue that bifurcation promotes judicial economy because, generally, a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation by an officer. (Dkt. 114 at 7–8.) Applying that rule, Defendants contend that unless Plaintiffs succeed on a claim against Defendant Officers, the City cannot be held liable. (*Id.* at 8.); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) ("A *Monell* plaintiff must establish that he suffered a deprivation of a federal right *before* municipal fault, deliberate indifference and causation come into play."). Consequently, any *Monell* discovery—which the City contends is extensive—should not commence before Defendant Officers are found liable. (Dkt. 114 at 8–11.)

Finally, Defendants note that, "if any of the individual defendants are found liable, the City will consent to entry of judgment against it for the damages caused by the violation and reasonable attorney fees without requiring Plaintiffs to prove § 1983 municipal liability . . . thereby avoiding litigation of the *Monell* claim

4

altogether." (*Id.* at 13.) Litigation of Plaintiffs' *Monell* claim and the corresponding discovery is thus unnecessary.

Plaintiffs disagree with Defendant City's prejudice and efficiency arguments. Plaintiffs contend that the balance of prejudice weighs against bifurcation because any so-called "*Monell* evidence" is likely to be "admissible against the Officers even if there were no *Monell* claim," and "a large portion of evidence of Officers' liability on the individual claims will be admissible against the City" on Plaintiffs' *Monell* claim. (Dkt. 123 at 12.) Moreover, it is "wholly speculative and premature" to predict "how the evidence at trial might prejudice a specific party." (*Id.*) Regardless, Plaintiffs argue that any prejudice to the Defendants at trial can be managed by motions *in limine* and limiting instructions. (*Id.* at 12–13.); *see Mendez v. City of Chicago*, 2020 WL 1479081, at *5 (N.D. Ill. Mar. 26, 2020) ("The best way to stave off Defendants' prejudice concern is to use motions *in limine* and limiting instructions at trial to make sure the jury understands the distinctions between the claims against the Defendant Officers and the City."). If anything, Plaintiffs contend that they would be the ones suffering prejudice because bifurcation "would both delay final resolution of their *Monell* claim and drive up the cost of this litigation." (Dkt. 123 at 13–14.)

Plaintiffs also contend that bifurcation would not promote efficiency. Plaintiffs assert that they are not required to prevail against Defendant Officers to prevail on their *Monell* claim because *Thomas v. Cook County Sheriff's Department* created an exception to the general rule that municipal liability is contingent upon officer liability. 604 F.3d 293, 305 (7th Cir. 2009). In *Thomas*, the Seventh Circuit explained

5

that "a municipality can be held liable under *Monell* even when its officers are not unless such a finding would create an *inconsistent* verdict." *Id.*; *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) (A "verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim."). Applying *Thomas*, Plaintiffs argue that "the City's liability does not depend on the Officers' liability" because the elements of Plaintiffs' *Monell* claim are different than the elements of the claims of illegal search and seizure, false arrest, and seizure of property. (Dkt. 123 at 6.)

Plaintiffs further argue that Defendants grossly overstated the burden of *Monell* discovery in this case. (*Id.* at 7.) Plaintiffs assert that this case "is one of nine cases pending in this District involving virtually the same *Monell* claim against the City arising from similar facts." (*Id.*) Moreover, Defendant City of Chicago "recently completed full discovery on all aspects of this very *Monell* claim" in the *Mendez* case. (*Id.* at 7–8 (citing *Mendez v. City of Chicago*, 1:18-cv-05560, Dkt. 426 ("all discovery is now closed").) Plaintiffs argue that Defendants lack a reason to refrain from using the "comprehensive *Monell* evidence" discovered in *Mendez* and other similar cases. (Dkt. 123 at 8.) Accordingly, any additional *Monell* discovery is minimal and should not be delayed.

Finally, Plaintiffs say Defendant City of Chicago's proposed consent to entry of judgment does not alleviate the need for a *Monell* trial. Relying on *Swanigan*, 775 F.3d at 959–62, Plaintiffs say the proposal is procedurally improper because it is not an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure. This is

6

because Defendant City of Chicago's offer does not fulfill Plaintiffs' goal of "obtaining a judgment against the City to deter future misconduct." (Dkt. 123 at 14.) Nor is the proposed consent a stipulation under Rule 16 of the Federal Rules of Civil Procedure because "it does not stipulate to any facts" and because Plaintiffs "emphatically reject it." (*Id.* at 14–15.)

### B. Analysis: Bifurcation Is Warranted

A district court has broad discretion to bifurcate claims for trial. *Real*, 195 F.R.D. at 620 (whether to bifurcate claims is "committed to the discretion of the district court" and "made on a case by case basis"). For the following reasons, the Court bifurcates Plaintiffs' *Monell* claim for discovery and trial.

First, the risk of unfair prejudice to Defendants justifies bifurcation. Plaintiffs seek to prove that Defendant City's de facto policy of using excessive force against and/or in the presence of children of color caused the minor Plaintiffs' constitutional injury. To support this claim, Plaintiffs seek discovery on all allegations against Chicago police officers from 2014 to 2020 of illegal searches in which a child was present for the search and some forced was used. (Dkt. 67 ¶¶ 29–43; Dkt. 114 at 3–7; Dkt. 123 at 7–8.) When presented with six years of excessive force complaints against other children, it is possible, perhaps probable, that a jury would, by association, impermissibly hold the Defendant Officers accountable by association. *Bradford*, 2019 WL 5208852, at *3 (Bifurcation warranted because introducing six years of evidence concerning violations by other city officials is "wholly unrelated to the Individual Defendants' conduct on the single day at issue in the case against them.").

7

Plaintiffs contend bifurcation would not alleviate this risk of prejudice because "a large portion of the so-called *Monell* evidence" would be admissible against Defendant Officers even if there were no *Monell* claim. ((Dkt. 123 at 12.) Plaintiffs, however, fail to explain how department-wide allegations of excessive force against children will be admissible against the individual Defendant Officers, who are accused of violating the rights of minor Plaintiffs during a single search.

Moreover, bifurcation prevents prejudice to Defendant City. Plaintiffs assert a *respondeat superior* claim against the Defendant Officers. This means that the jury must assess evidence regarding the individual Officers' misconduct and City policy, which risks that "*Monell* would devolve into *a respondeat superior* claim." *Bradford*, 2019 WL 5208852, at *4; *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) ("There is no respondeat superior liability under § 1983; the Supreme Court 'distinguish[es] acts of the *municipality* from acts of *employees* of the municipality.' " (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986))). Bifurcation avoids this risk entirely.

Plaintiffs contend that any risk of prejudice can be ameliorated through motions *in limine* and limiting instructions. Although it is undisputed that "limiting instructions are taken very seriously in this Circuit as a tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow them," *McLaughlin v. State Farm Mut. Ins. Co.*, 30 F.3d 861, 870–71 (7th Cir. 1994), there are limits to that rule. *See, e.g., United States v. Chaparro*, 956 F.3d 462, 482 (7th Cir. 2020) (noting that, although the usual view is that "limiting instructions

8

cure everything," the Seventh Circuit has "made clear" that "this presumption is rebuttable") (citing *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 834 (7th Cir. 2016)). Because of the potentially inflammatory evidence regarding excessive force against minors and the nuanced difference between *Monell* and *respondeat superior* liability, this case presents one of those perhaps-rare occasions where, in the Court's view, limiting instructions are insufficient to ameliorate the potential prejudice to Defendants.

Because one of Rule 42(b)'s criteria for bifurcation—avoidance of prejudice—is satisfied, the Court is not obligated to address judicial economy and efficiency. *See Chlopek*, 499 F.3d at 700 (If "one of [Rule 42(b)'s] criteria is met, the district court may order bifurcation . . . ."). But addressing these considerations briefly, the Court finds that both Plaintiffs and Defendants have persuasive arguments. *Monell* discovery is notoriously burdensome and costly. *See Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018) (Willingness to bifurcate comes from recognition that "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.") (cleaned up). But Defendant City of Chicago already has engaged in *Monell* discovery in other similarly situated cases, which significantly reduces the burden of discovery. And although bifurcation will allow for a more efficient resolution of the claims against the Defendant Officers, it also delays resolution of the *Monell* claim against Defendant City and requires two separate trials. In the end, however, even if judicial economy

9

and efficiency entirely favored Plaintiffs—which it does not—the Court would still find that the avoidance of prejudice justifies bifurcation.

Bifurcation is not permissible in any event if it would unfairly prejudice Plaintiffs. *Chlopek*, 499 F.3d at 700. There is, however, no unfair prejudice apparent to the Court. Plaintiffs contend that their "strong non-economic interest in police accountability and positive institutional reform" requires putting Defendant City of Chicago on trial publicly (Dkt. 123 at 14–15), but nothing about today's decision will frustrate that goal. Plaintiffs will still have the opportunity to present their *Monell* evidence, but that opportunity will consist of a second, later trial. And although bifurcation might require Plaintiffs to expend additional resources in preparing for two separate trials, that cost is both justified for the reasons provided above and, to a lesser extent, incident to Plaintiffs' choice to bring a *Monell* claim in this action.

Finally, the parties disagree whether the Defendant City's liability depends on the Defendant Officers' liability. Although determining whether *Heller* or *Thomas* provides the applicable rule might influence the Court's efficiency analysis, it would not alleviate the Court's concern with prejudice to the Defendants, which is the overarching justification for bifurcation. Moreover, *Thomas* addressed whether a municipality could ever be held liable under *Monell* when individual defendants were found not liable for the underlying episode—not whether that liability should be established in a single trial or separately. *See Thomas*, 604 F.3d at 305. Regardless, the *Heller*-or-*Thomas* issue can be revisited after the Defendant Officers' potential

10

liability is resolved at the first trial.³

Without deciding the issue, the Court notes that *Heller* likely governs because *Thomas* created a *narrow* exception to the rule that municipal liability is contingent on officer liability. *Thomas* only applies when the *Monell* claim is "factually distinct" from the claims against the individual officers. *Swanigan*, 775 F.3d at 962. The *Monell* claim here, premised on the Defendant Officers' use of excessive force, is not factually distinct from the remaining claims. Although Plaintiffs do not bring a separate excessive force claim against the Defendant Officers, (Dkt. 123 at 6), they do allege that the Officers conducted an unlawful search by pointing assault rifles at the minor Plaintiffs. (Dkt. 67 ¶¶ 3, 6, 66, 69.) In addition, Plaintiffs' state law assault claim alleges that the Defendant Officers, by pointing rifles at Plaintiffs at close range, created reasonable apprehension in Plaintiffs of immediate harmful contact to their persons. (*Id.* ¶¶ 196–202.) The jury will thus be required to decide whether the Defendant Officers' force was reasonable in the Officer Defendants' trial even though there is no independent claim for excessive force.⁴ Bifurcation and a stay of discovery is thus warranted. *Swanigan*, 775 F.3d at 962 (When *Heller* applies, "the judge's

---

³ Likewise, the issue regarding Defendant City of Chicago's proposed consent to entry of judgment can be revisited after the first trial on the claims against the Defendant Officers because the issue would be mooted if the Defendant Officers are found not liable.

⁴ Even if the jury is not required to make an excessive force finding in conjunction with any of the other claims brought against the Officer Defendants, this would not preclude bifurcation. *See Tate v. City of Chicago*, 2021 WL 4400982, at *2 (N.D. Ill. Sept. 27, 2021). As Judge Durkin explained, a "special interrogatory [can be given] to the jury asking for findings on whether any of the individual defendants used excessive force," but because "Plaintiffs have not brought an excessive force claim against any of the individual officers, the Court would not enter judgment against any of them on the jury's excessive force finding. Rather, that finding would pertain only to the claim against the City." *Id.*

11

decision to stay the *Monell* claim . . . was sensible, especially in light of the volume of civil-rights litigation that district courts must manage.").

For these reasons, bifurcation for trial of Plaintiffs' *Monell* claim from Plaintiffs' remaining claims and a stay of discovery on the *Monell* claim is justified.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to bifurcate and to stay discovery and trial on Plaintiffs' *Monell* claim (Dkt. 114) is granted.

SO ORDERED in No. 19-cv-07287.

Date: March 7, 2023

_____
JOHN F. KNESS
United States District Judge

12